_____ FILED   _____ ENTERED
_____ LODGED   _____ RECEIVED

NOV 16 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                DEPUTY

The Honorable Richard A. Jones

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEFF ZIRKLE,<br><br>Defendant. | No. CR18-277RAJ<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Seth Wilkinson, Assistant United States Attorney; and Jeff Zirkle, and his attorney, Harold Malkin, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

1.     **Interdependence of Agreements:**  This Plea Agreement is conditioned on: (a) the entry of a guilty plea and Plea Agreement by Craig Lorch in this matter; and (b) the execution by Total Reclaim and the United States of a non-prosecution agreement. If either of these events fails to occur by November 16, 2018, or if either Defendant or Craig Lorch later seeks to withdraw his guilty plea, the United States may, at its election, withdraw from either or both Plea Agreements. If the United States chooses to withdraw from this Plea Agreement under these circumstances, Defendant understands that the United States may seek an Indictment against him for all crimes for which the United States has sufficient evidence.

U.S. v. Jeff Zirkle; Plea Agreement- 1

UNITED STATES ATTORNEY
700 STEWART STREET,
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      2.    **Waiver of Indictment**.  Defendant, having been advised of the right to be

2  charged by Indictment, agrees to waive that right and enter a plea of guilty to the charge

3  brought by the United States Attorney in an Information.

4      3.    **The Charge**.  Defendant, having been advised of the right to have this

5  matter tried before a jury, agrees to waive that right and enter a plea of guilty to the

6  charge of Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code,

7  Section 371, as charged in Count 1 of the Information.

8      By entering a plea of guilty, Defendant hereby waives all objections to the form of

9  the charging document.  Defendant further understands that before entering his guilty

10  plea, he will be placed under oath.  Any statement given by Defendant under oath may be

11  used by the United States in a prosecution for perjury or false statement.

12      4.    **Elements of the Offense**.  The elements of Conspiracy to Commit Wire

13  Fraud in violation of Title 18, United States Code, Section 371 are as follow:

14      *First*, there was an agreement between two or more persons to commit the crime

15  of wire fraud;

16      *Second*, the defendant became a member of the conspiracy knowing of its object

17  and intending to help accomplish it; and

18      *Third*, one of the members of the conspiracy performed at least one overt act for

19  the purpose of carrying out the conspiracy.

20      The elements of Wire Fraud are as follow:

21      *First*, the defendant knowingly devised or participated in a scheme or plan to

22  defraud, or a scheme or plan for obtaining money or property by means of false or

23  fraudulent pretenses, representations or promises;

24      *Second*, the statements made or facts omitted as part of the scheme were material;

25  that is, they had a natural tendency to influence, or were capable of influencing, a person

26  to part with money or property;

27

28  U.S. v. Jeff Zirkle; Plea Agreement- 2

*Third*, the defendant acted with the intent to defraud, that is, with the intent to deceive or cheat; and

*Fourth*, the defendant used, or caused to be used, the interstate wires to carry out or attempt to carry out an essential part of the scheme.

5.      **The Penalties**.  Defendant understands that the maximum penalties applicable to the offense of Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code, Section 371 are as follow:  A maximum term of imprisonment of five (5) years, a fine of up to two hundred fifty thousand dollars ($250,000), or twice the gross pecuniary gain to the defendant or the gross pecuniary loss to the victims of the offense, a period of supervision following release from prison of up to three (3) years, and a mandatory special assessment of one hundred dollars ($100).  If a probationary sentence is imposed, the probationary period can be for up to five (5) years.  Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictive conditions and requirements.  Defendant further understands that if supervised release is imposed and he violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed.  This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

U.S. v. Jeff Zirkle; Plea Agreement- 3

6.       **Rights Waived by Pleading Guilty.**  Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

   a.       The right to plead not guilty and to persist in a plea of not guilty;

   b.       The right to a speedy and public trial before a jury of his peers;

   c.       The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

   d.       The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

   e.       The right to confront and cross-examine witnesses against Defendant at trial;

   f.       The right to compel or subpoena witnesses to appear on his behalf at trial;

   g.       The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

   h.       The right to appeal a finding of guilt or any pretrial rulings.

7.       **Ultimate Sentence**.  Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8.       **Statement of Facts**.  Defendant admits he is guilty of the charged offense. The parties agree on the following facts:

   a.       ***Total Reclaim and Electronics Recycling:***  Defendants Jeff Zirkle and Craig Lorch are, and at all relevant times were, the owners and Chief Executive Officers of Total Reclaim, Inc. ("Total Reclaim").  Total Reclaim is a Seattle-based corporation and the Northwest's largest recycler of electronic waste.  Total Reclaim's business involves recycling and/or processing multiple waste streams comprised of, among other things, a variety of domestic and commercial electronic items (referred to in some of Total Reclaim's customer agreements as "Covered Electronic Products") for public, quasi-public and private entities.  Depending on the waste stream, these entities either sell these items to Total Reclaim or pay Total Reclaim a fee to process these items based on the amount and type of material recycled.

U.S. v. Jeff Zirkle; Plea Agreement- 4

UNITED STATES ATTORNEY
700 STEWART STREET,
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.      Some Covered Electronic Products ("CEPs") contain materials, such as mercury, batteries, leaded glass and whole circuit boards, that can expose workers and others to serious health risks if they are mishandled during processing.  These potential risks are present whenever these materials are not properly processed, but are known to exist in developing ("non-OECD") countries, where workers sometimes disassemble electronic devices without using proper safety equipment or procedures.  While worker safety laws exist in the United States to protect against such risks, many non-OECD countries do not have such laws.  As a result, some entities that contract for electronics recycling services engage only processors that follow specific recycling protocols, including proscriptions or restrictions on the export of hazardous materials to non-OECD countries.

c.      The Basel Convention and Basel Amendments are a set of international protocols that address the international shipment of CEPs.  The United States is not a signatory to these protocols and United States law does not prohibit the export of CEPs for recycling.  The Basel Convention, however, proscribes the export to non-OECD countries of "hazardous materials," as defined in the Basel Convention,[1] that have not been approved in writing by the receiving country.  The Basel Amendments proscribe the export of electronic items containing hazardous material to any non-OECD country for recycling or disposal.

d.      One substance found in certain CEPs is mercury.  Above certain established levels, mercury has the potential to cause organ damage, nerve damage, mental impairment, and a variety of other symptoms.  Mercury exists in varying amounts in fluorescent lamps, including cold cathode fluorescent lamps ("CCFLs") in liquid crystal display ("LCD") monitors.  LCD monitors are one type of flat screen monitor.  Between 2009 and 2015, LCD monitors represented by far the majority of flat screen monitors sold and processed in the United States.  Mercury is defined as a "hazardous material" under the Basel Convention, and as a "material of concern" under certain agreements to which Total Reclaim was a party.

e.      ***Defendant's Representations to Customers:***  To attract and retain customers, Zirkle and Lorch promoted Total Reclaim as a responsible electronics recycler.  In particular, Zirkle and Lorch caused Total Reclaim to represent that Total Reclaim did not export, or allow the export of, CEPs containing hazardous materials or materials of concern to non-OECD countries.  Total Reclaim's website stated that "our

---

[1] The Basel Convention's definition of "hazardous material" differs from the definition of that term in United States environmental statutes and applicable regulations.  Nothing in this agreement is meant to imply that the material involved in this case constitutes "hazardous material" or "hazardous waste" under United States environmental law.  Accordingly, references to "hazardous material" in this agreement refer to the Basel Convention definition of that term or to the definition of that term used in certain agreements to which Total Reclaim was a party.

U.S. v. Jeff Zirkle; Plea Agreement- 5

UNITED STATES ATTORNEY
700 STEWART STREET,
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | commitment to environmental responsibility is at the core of everything Total Reclaim
2 | does," and that this commitment is reflected in "every facet of our operations." In
3 | February 2003, Lorch, on behalf of Total Reclaim, signed the Electronics Recycler's
Pledge of True Stewardship, in which Lorch represented that Total Reclaim would follow
4 | certain best recycling practices, including that "we will not allow the export of hazardous
E-waste we handle to be exported from developed to developing countries either directly
5 | or through intermediaries." Total Reclaim also published on its website an
6 | Environmental Health and Safety Policy Statement stating that Total Reclaim "prohibits
the export of hazardous electronic waste throughout the Recycling Chain which violates
7 | the Basel Convention [or] Basel Amendments."

8 |  f.  Zirkle and Lorch also promoted the fact that Total Reclaim was
9 | certified as an "E-Steward." The E-Steward certification program is administered by a
Seattle-based non-profit organization known as the Basel Action Network ("BAN"). The
10 | purpose of BAN and the E-Stewards program is to promote responsible electronics
11 | recycling practices, including preventing the shipment of hazardous materials to non-
OECD countries. To obtain the E-Stewards certification, a company must agree to meet
12 | certain standards, including compliance with the Basel Convention and Basel
13 | Amendments, and must undergo an annual audit of its conformance to those standards.

14 |  g.  ***Total Reclaim's Agreements With its Customers:*** Total Reclaim's
15 | largest customer was the Washington Materials Management and Financing Authority
("WMMFA"). WMMFA is a quasi-public entity financed by the electronics industry that
16 | funds the responsible disposal of consumer electronic waste in Washington. WMMFA,
17 | in conjunction with Washington Department of Ecology ("Washington DOE"), operates
the E-Cycle Washington program. Under E-Cycle Washington, consumers deposit used
18 | electronics products (such as computers or televisions) at designated disposal sites (such
19 | as Goodwill Industries drop-off centers) free of charge. WMMFA typically pays
processors, like Total Reclaim, to transport and dispose of many types of these products
20 | in accordance with DOE regulations. Between 2009 and 2015, Total Reclaim was the
21 | largest processor of E-Cycle Washington material.

22 |  h.  Under its service agreement with WMMFA, Total Reclaim agreed to
23 | comply with the "Preferred Performance Standards" promulgated by the Washington
DOE. The Preferred Performance Standards required, *inter alia*, that the processor
24 | "remove from all [CEPs and components] destined for recycling any parts that contain
25 | materials of concern that would pose a risk to public safety, public health or the
environment during subsequent processing." The Preferred Performance Standards also
26 | proscribed Total Reclaim from exporting any materials of concern (including mercury) to
27 | any non-OECD country without first receiving confirmation from the receiving country
or the United States Environmental Protection Agency that the country legally accepts
28 |

UNITED STATES ATTORNEY
700 STEWART STREET,
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   such imports.  Total Reclaim was required to undergo audits to verify its compliance with
2   the Preferred Performance Standards.

3             i.       Total Reclaim's service agreements with various other customers
4   either (a) explicitly proscribed Total Reclaim from exporting materials of concern to non-
    OECD countries; (b) required Total Reclaim to maintain the E-Stewards certification
5   (which requires compliance with the Basel Convention and Basel Amendments); or (c)
6   required Total Reclaim to disclose the export of any materials of concern to non-OECD
    countries.  For example:
7
8        •   Total Reclaim's agreements with the City of Seattle and Reverse
             Logistics Group required that Total Reclaim maintain the E-
9            Stewards certification;

10       •   Total Reclaim's agreement with Manufacturers Recycling
11           Management Company stated that Total Reclaim would not export
             any electronics end of life products to non-OECD countries;
12
13       •   Total Reclaim's agreement with WM Recycle America proscribed
             Total Reclaim from allowing "hazardous e-waste" to be exported,
14           directly or indirectly, to developing countries; and
15
16       •   Total Reclaim's agreement with National Center for Electronics
             Recycling ("NCER") required Total Reclaim to notify NCER of all
17           downstream vendors who received materials of concern provided to
             Total Reclaim.
18
19            j.       ***The Scheme to Defraud and the Export of LCDs to Hong Kong:***
    Beginning no later than January 2009, and continuing until January 2016, Total
20  Reclaim's customers began providing Total Reclaim with flat screen monitors to recycle
21  according to the above-referenced agreements.  Lorch and Zirkle knew that Total
    Reclaim lacked the capacity to safely recycle or process flat screen monitors and their
22  mercury-containing components in the volume it was receiving.  As a result, Zirkle and
23  Lorch agreed that, instead of recycling the flat screen monitors as required by some of
    their customer agreements, and as stated in their marketing materials, Total Reclaim
24  would sell the flat screen monitors to a company known as M-Stream without placing any
25  restriction on the manner in which M-Stream disposed of the monitors.  Zirkle and Lorch
    knew that M-Stream intended to export the flat screen monitors to Hong Kong for various
26  purposes, including reuse, refurbishment, recycling, and disposal.  Hong Kong is a non-
27  OECD country that does not accept CEPs containing mercury from the United States.

28

U.S. v. Jeff Zirkle; Plea Agreement- 7

UNITED STATES ATTORNEY
700 STEWART STREET,
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

k.      Defendants knew that Total Reclaim's participation in the shipment of flat screen monitors to Hong Kong was materially contrary to the statements made in their marketing materials, and represented a material violation of the E-Steward standards and the Washington DOE Preferred Processor Standards.  To ensure that they would continue to receive payments for recycling flat screen monitors, Zirkle and Lorch agreed, with intent to defraud, to conceal this practice from Total Reclaim's customers and auditors by means of false representations, promises, and pretenses.  At least three Total Reclaim employees in addition to Lorch and Zirkle participated in this course of conduct.

l.      Over the period beginning no later than January 2009, and ending in January 2016, when flat screen monitors were delivered to Total Reclaim, Zirkle and Lorch directed their employees to transport the flat screen monitors to an off-site facility on Harbor Island, in Seattle, where Total Reclaim stockpiled flat screen monitors, stored various other incoming and outgoing materials, and where the company's trucking fleet was located.  Zirkle and Lorch then sold the flat screen monitors to M-Stream, knowing that M-Stream intended to ship, and did ship, the flat screen monitors to Hong Kong.  Total Reclaim transferred at least 8.3 million pounds of flat screen monitors to M-Stream, which were then shipped to Hong Kong in at least 430 shipping containers.  During the same time period, Total Reclaim's customers paid Total Reclaim at least $1,182,113 to process these flat screen monitors, and M-Stream paid Total Reclaim at least $1,020,215 for them.

m.      Zirkle and Lorch withheld information from Total Reclaim's customers, auditors, and certifying bodies to conceal the fact that Total Reclaim was causing flat screen monitors to be shipped to Hong Kong.  Further, Zirkle and Lorch falsified and caused to be falsified documentation provided to Total Reclaim's auditors and customers to make it appear that all components of the flat screen monitors it processed were being disposed of domestically.  For example, Zirkle and Lorch prepared or caused to be prepared end destination charts and end destination tables representing that mercury-bearing fluorescent light tubes were disposed of in the United States, when in fact, as defendants knew, they were being disposed of in Hong Kong.  Similarly, Zirkle and Lorch prepared annual reports to WMMFA on which Total Reclaim was required to disclose the final destination for all consumer electronics products processed by Total Reclaim.  Zirkle and Lorch intentionally failed to list Hong Kong as a recipient of these goods.  Further, Zirkle and Lorch failed to disclose to their auditors the existence of the Harbor Island facility used to stockpile the flat screen monitors.

n.      ***The Discovery of the Fraud:***  In 2014, the BAN organization placed GPS trackers in LCD monitors and introduced them into the waste stream.  Tracking data revealed that two of the trackers traveled to Total Reclaim facilities, then to the Total Reclaim Harbor Island facility, and then to a facility in Hong Kong.  BAN representatives

U.S. v. Jeff Zirkle; Plea Agreement- 8

traveled to the Hong Kong sites where they observed flat screen monitors being disassembled. The BAN representatives reported observing monitors being dismantled through what they opined to be "a primitive process [that] relied on . . . Mainland Chinese laborers who spent all day opening the CCFL-type LCD monitors, smashing them apart, and throwing the aluminum, plastic and circuitry into different piles or [containers], all in outdoor recycling operations. The pile of smashed metal on the ground below the workstation contained significant quantities of CCFLs. No precautions were taken with these mercury-[containing] tubes . . . inevitably releasing mercury into the ecosystem and workplace there."

o.   In December 2014, BAN representatives initially confronted Lorch with their findings that Total Reclaim was causing the export of flat screen monitors to Hong Kong. Lorch initially did not deny the export of flat screen monitors. During a subsequent meeting with BAN representatives, Zirkle and Lorch denied the practice, contending that the tracking devices must have become separated from the LCD monitors. Lorch also altered approximately 370 Total Reclaim shipping manifests to make it appear that the manifests documented the shipment of mixed plastic to Hong Kong, when in fact the manifests documented the shipment of flat screen monitors to Hong Kong. In addition, Lorch and Zirkle requested that the owner of M Stream provide them with falsified M Stream documents similarly reflecting that M Stream was shipping plastic (rather than flat screen monitors) to Hong Kong. Lorch then provided the falsified documents to BAN.

p.   Zirkle and Lorch caused the transmission of interstate wire signals in furtherance of the scheme to defraud. For example, on or about February 11, 2014, Lorch sent an email to a WMMFA representative in which Lorch represented that Total Reclaim disposed of mercury-bearing devices in the United States. The email traveled from a server in Western District of Washington to a server in Massachusetts.

q.   By virtue of the foregoing conduct, Zirkle entered into a conspiracy to commit the crime of wire fraud, knowing of the object of the conspiracy. Zirkle and his co-conspirators undertook at least one overt act, including the overt acts described above, in furtherance of the object of the conspiracy.

9.   **United States Sentencing Guidelines**. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including:  (1) the nature and circumstances of the offense; (2) the

U.S. v. Jeff Zirkle; Plea Agreement- 9

UNITED STATES ATTORNEY
700 STEWART STREET,
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a. The Court will determine applicable Defendant's Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d. Defendant may not withdraw his guilty plea solely because of the sentence imposed by the Court.

10.   **Acceptance of Responsibility.** At sentencing, if the district court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and the defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the district court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely providing substantial assistance during the government's investigation, and by timely notifying the United

UNITED STATES ATTORNEY
700 STEWART STREET,
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

States of his intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  The United States will not oppose Defendant's request for a downward adjustment for acceptance of responsibility.

11.    **Sentencing Factors**.  The parties agree that the following Sentencing Guidelines provisions apply to this case:

a.    A base offense level of six (6) pursuant to USSG § § 2X1.1 and 2B1.1(a)(2);

b.    A fourteen (14) level enhancement pursuant to USSG § 2B1.1(b)(1)(H) because the loss is more than $550,000, but less than $1,500,000;

c.    A two (2) level enhancement pursuant to USSG § 2B1.1(b)(10)(C) because the offense involved sophisticated means and the defendant intentionally engaged in the conduct constituting sophisticated means;

d.    A four (4) level enhancement pursuant to USSG § 3B1.1(a) because the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; and

e.    A two (2) level enhancement pursuant to USSG § 3B1.3 because the defendant abused a position of public or private trust and the use of a special skill.

The parties disagree as to whether a two (2) point enhancement is appropriate pursuant to USSG § 2B1.1(b)(15)(A), which applies to offenses involving a risk of serious bodily injury, is applicable to the facts of this case.  Defendant understands that the government will advocate for the application of this adjustment, and that the Court will decide at the time of sentencing whether this enhancement should apply.  Defendant understands that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

12.    **No Agreement Regarding Sentencing Recommendations.**  Defendant understands that the parties have reached no agreements regarding the sentences they will

U.S. v. Jeff Zirkle; Plea Agreement- 11

1    recommend.  As such, the United States is free to recommend any sentence up to the

2    applicable statutory maximum, and Defendant is free to recommend any sentence he

3    believes to be appropriate, including a sentence of probation.

4         13.    **Restitution.**  Defendant shall make restitution, pursuant to

5    18 U.S.C. § 3663A, to the victims of the offense in an amount not greater than

6    $1,182,113, and not less than $733,585.  If defendant, Craig Lorch, or Total Reclaim

7    makes restitution to the National Center for Electronics Recycling ("NCER") between the

8    date of this Agreement and the date of sentencing as compensation for the conduct

9    described in Paragraph 8, defendant shall receive a credit in the amount of that payment

10   against the restitution due to NCER.  This obligation shall be joint and several with the

11   restitution obligation of Craig Lorch in this matter.  This amount shall be due and payable

12   immediately and shall be paid in accordance with a schedule of payments as proposed by

13   the United States Probation Office and ordered by the Court.

14        14.    **Non-Prosecution of Additional Offenses**.  As part of this Plea Agreement,

15   the United States Attorney's Office for the Western District of Washington agrees not to

16   prosecute Defendant for any additional offenses known to it as of the time of this

17   Agreement that are based upon evidence in its possession at this time, and that arise out

18   of the conduct giving rise to this investigation.  In this regard, Defendant recognizes the

19   United States has agreed not to prosecute all of the criminal charges the evidence

20   establishes were committed by Defendant solely because of the promises made by

21   Defendant in this Agreement.  Defendant agrees, however, that for purposes of preparing

22   the Presentence Report, the United States Attorney's Office will provide the United

23   States Probation Office with evidence of all conduct committed by Defendant.

24        Defendant agrees that any charges to be dismissed before or at the time of

25   sentencing were substantially justified in light of the evidence available to the United

26   States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant

27

28   U.S. v. Jeff Zirkle; Plea Agreement- 12

with a basis for any future claims under the "Hyde Amendment," Pub.L. No. 105-119 (1997).

15.   **Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence.  Defendant agrees that, in the event Defendant breaches this Plea Agreement, Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of his confinement, (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range.  Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

16.   **Waiver of Appellate Rights and Rights to Collateral Attacks.**  In consideration of the commitments made by the government herein, including the government's commitment not to charge defendant with other offenses, Defendant

U.S. v. Jeff Zirkle; Plea Agreement- 13

UNITED STATES ATTORNEY
700 STEWART STREET,
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 waives all rights to appeal from his conviction and any pretrial rulings of the court.

2 Defendant further agrees that, provided the court imposes a custodial sentence that is

3 within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if

4 greater than the Guidelines range) as determined by the court at the time of sentencing,

5 Defendant waives to the full extent of the law:

6       a.    Any right conferred by Title 18, United States Code, Section 3742,

7 to challenge, on direct appeal, the sentence imposed by the court, including any fine,

8 restitution order, probation or supervised release conditions, or forfeiture order (if

9 applicable); and

10       b.    Any right to bring a collateral attack against the conviction and

11 sentence, including any restitution order imposed, except as it may relate to the

12 effectiveness of legal representation; and

13     This waiver does not preclude Defendant from bringing an appropriate motion

14 pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the

15 decisions of the Bureau of Prisons regarding the execution of his sentence.

16     If Defendant breaches this Plea Agreement at any time by appealing or collaterally

17 attacking (except as to effectiveness of legal representation) the conviction or sentence in

18 any way, the United States may prosecute Defendant for any counts, including those with

19 mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

20 Agreement.

21     17.   **Voluntariness of Plea**.  Defendant agrees that he has entered into this Plea

22 Agreement freely and voluntarily and that no threats or promises, other than the promises

23 contained in this Plea Agreement, were made to induce Defendant to enter his plea of

24 guilty.

25     18.   **Statute of Limitations**.  In the event this Agreement is not accepted by the

26 Court for any reason, or Defendant has breached any of the terms of this Plea Agreement,

27 the statute of limitations shall be deemed to have been tolled from the date of the Plea

28 U.S. v. Jeff Zirkle; Plea Agreement- 14

UNITED STATES ATTORNEY
700 STEWART STREET,
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

19.    **Completeness of Agreement**.  The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District of Washington.  It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated: November 16, 2018.

JEFF ZIRKLE
Defendant

HAROLD MALKIN
Attorney for Defendant

SETH WILKINSON
Assistant United States Attorney

U.S. v. Jeff Zirkle; Plea Agreement- 15