UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>   v.<br><br>CRAIG LORCH and JEFFREY ZIRKLE,<br><br>              Defendants. | Case No. 2:18-cr-00277-RAJ<br><br>**DEFENDANT JEFFREY ZIRKLE'S SENTENCING MEMORANDUM** |

## I.     INTRODUCTION

On April 23, 2019, Jeff Zirkle, together with co-defendant Craig Lorch, will appear for sentencing following their guilty pleas to a single count of conspiracy to commit wire fraud. Mr. Zirkle and Mr. Lorch are the two principal co-owners of Total Reclaim, a Kent, Washington-based company operating in Washington, Oregon, and Alaska, that recycles a wide variety of used commercial and consumer waste streams, including electronic or "e-waste" comprised of computers and other electronic devices.

Mr. Zirkle has no criminal history score. He has dedicated almost all of his professional life to building and operating a legitimate, respected, and innovative small business that, over many years, has greatly benefitted Seattle and the Pacific Northwest and provided dozens of workers with family-wage jobs and opportunities for career advancement. He is moreover an unfailingly devoted and caring father, son, sibling, friend, neighbor, and employer.

ZIRKLE'S SENTENCING MEMORANDUM - 1
CASE NO. 2:18-CR-00277-RAJ

130136.0001/7597482.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

To be sure, the offense conduct—for which Mr. Zirkle has accepted full responsibility through both word and deed—is serious and deserving of punishment. Indeed, unlike many similarly situated defendants, Mr. Zirkle appreciates that an appropriate punishment for his financial fraud should include a period of incarceration. At the same time, his offense represents a demonstrable and uncharacteristic aberration, both personally and professionally. It arose out of the handling of a single type of electronic component that comprised a mere 2% of Total Reclaim's revenue and 2.8% of the total volume of material handled by Total Reclaim during the years in question. The offense should thus, in fairness, be considered in context—alongside an otherwise law-abiding, ethical, productive, and constructive life.

## II.        BACKGROUND & PROCEDURAL HISTORY

**A.        Offense Conduct and Procedural Background**

The conduct for which Mr. Zirkle has pleaded guilty took place from about January 2009 to January 2016. It is described extensively in the Plea Agreement (Dkt. 15 at 4–9) and in the Presentence Report ("PSR"). Mr. Zirkle will not repeat those facts in detail.

At its core, this case is not complex. It involves a willful breach of contract and knowing misrepresentations to some of Total Reclaim's customers. Those customers, some of which were public entities or received government funding, entered into service agreements with Total Reclaim, under which Total Reclaim committed not to export to developing countries certain e-waste that the customers paid Total Reclaim to recycle.

Despite these commitments, and driven by business convenience linked to the need to develop additional processing capacity, Mr. Zirkle and Mr. Lorch agreed to sell mercury-containing Liquid Crystal Display monitors ("flat screens") to an exporter with whom they had a pre-existing relationship and who they knew intended to and did export them to Hong Kong, a contractually prohibited destination. As both the Plea Agreement and the PSR acknowledge, "United States law does not prohibit the export of [flat screens]." Dkt. 15 at 5; PSR ¶ 10.

This conduct began on a small scale, and grew over time due to the sharp and unexpected increase in the number of flat screens Total Reclaim received from customers. The third-party

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

exporter shipped roughly 8.3 million pounds of flat screens to Hong Kong, primarily for reuse and refurbishment. But after arriving in Hong Kong, some number of flat screens proved to be unsuitable for further use and were instead diverted for disassembly and recycling to at least one rudimentary processing facility. Mr. Zirkle and Mr. Lorch failed to disclose, and took steps to conceal, that Total Reclaim was selling flat screens tendered to it for recycling for export, in violation of the customers' service agreements.

## B. Personal Characteristics

### 1. *Mr. Zirkle's upbringing, education, and family life*

Mr. Zirkle will turn 56 years old the day after he comes before the Court for sentencing. Born in Chandler, Arizona, to parents who exemplified public service and traditional values, Mr. Zirkle has spent the last nearly four decades devoted to family and building a successful business through hard work, innovation, and integrity. That a profound and inexcusable lapse in judgment led him to his current situation should not overshadow his otherwise productive and law-abiding life.

A quiet and unassuming man, Mr. Zirkle has a small circle of friends and family to whom he is unfailingly loyal. Mr. Zirkle's father served in the U.S. Air Force. That service brought the family—including his parents, his sister, and his brother—to University Place, Washington, when Mr. Zirkle was a small child. He has been a proud member of our community since that time. While his father continued to serve in the Air Force at McChord Field (and later with the U.S. Army Corps of Engineers), Mr. Zirkle's mother also modeled public service as an employee of the General Services Administration.

When he was 15, Mr. Zirkle's parents divorced. That experience helped forge his commitment to family, even during trying times. Indeed, in the aftermath of Mr. Zirkle's own divorce years later, his two children chose to live with him.

Mr. Zirkle obtained a high school diploma. He next tried to follow his parents' example of service by applying to be a firefighter. Despite testing first among his class of applicants, knee injuries precluded medical clearance. PSR ¶ 58. Even with this setback, Mr. Zirkle was later able

ZIRKLE'S SENTENCING MEMORANDUM - 3
CASE NO. 2:18-CR-00277-RAJ

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

130136.0001/7597482.5

to help those in need in his community while serving as an Emergency Medical Technician.

Following his entry into the heating, ventilation, and air conditioning field, Mr. Zirkle discovered and nurtured a flair for numbers and logistics. He also developed an expertise in the economic and environmental potential of recycling refrigerators and refrigerants, as well as more complex and challenging materials. After meeting Mr. Lorch, the two launched Total Reclaim in 1991, and over time their complementary management skills and personalities enabled Total Reclaim to become a dominant player in the regional recycling industry.

Mr. Zirkle's first marriage ended in 2013 after a three-year separation. His daughter, Alexandra, lives with him and, after working as an emergency room technician, has returned to school to become either a pharmacist or a physician assistant. Mr. Zirkle's son, Hayden, lives in Ellensburg, Washington and, with his father's support and guidance, has started his own excavation company. Both children—then teenagers, now in their mid-20s—chose to live with him after the separation. Their letters of support, attached in Exhibit 1, attest to the close bond they share with their father and the positive influence he has been and continues to be in their lives.

Since 2017, Mr. Zirkle has been dating Mary Correll, a dentist. Dr. Correll recently accepted Mr. Zirkle's proposal to marry.

2. *Mr. Zirkle's Businesses: Total Reclaim and EcoLights*

Mr. Zirkle's contributions to our region's environmental quality and industry are significant. Total Reclaim, its operations, and its innovations are discussed in a video submitted to Probation available here and attached as Exhibit 4.

Mr. Zirkle and Mr. Lorch created Total Reclaim to help businesses and public entities properly recycle refrigerators and other appliances under the framework established by the 1990 Amendments to the Clean Air Act. Those amendments required that certain gases, such as Freon, be captured—instead of released into the atmosphere—during disposal or recycling.

In 1997, they established a new company—EcoLights Northwest—becoming the first recycler of mercury-containing fluorescent lamps in the Pacific Northwest and, to this day, the

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

only such company in Washington State.

Three years later, Total Reclaim started recycling electronics. It quickly became the largest electronics recycler in the Pacific Northwest. As the video attached as Exhibit 4 explains, Total Reclaim's employees recycle millions of pounds of electronics each year. Even today, after the contraction in the business and its operations brought about by the government's investigation and these proceedings, Total Reclaim employs 65 people (down from more than 160 employees when the sale of flat screens for export was exposed). Those employees continue to process more than 17 million pounds of electronics and lights per year, using proprietary processes pioneered by the company.

Over the past 25-plus years, through various programs and initiatives, Total Reclaim has safely and responsibly recycled more than half a billion pounds of waste. The company has been honored as the Recycler of the Year from the Washington State Recycling Association and won a Program Innovation award from the National Association of Hazardous Materials Managers.

Other than minor administrative citations since their founding, and except for this criminal proceeding, neither Total Reclaim nor EcoLights has been the subject of an investigation or enforcement action related to the proper handling of material tendered to them for recycling.

3.    *Letters of Support from Mr. Zirkle's Family, Friends, and Co-Workers*

Mr. Zirkle has the continuing support of his family, friends, neighbors, employees, and business associates. One aspect of the letters of support attached to this memorandum that bears special mention—especially for someone as reserved and focused on family and business as Mr. Zirkle—is the depth of generosity and dedication to serving others at the core of Mr. Zirkle's life. As the letters bear out, he has paid college tuition for friends and family going through tough times and provided advice and support for business associates and neighbors facing life's challenges. He has also expressed his deep shame and remorse flowing from his crime. *See* Exs. 1–3 (collecting letters).

While this memorandum will not dwell on those letters—all are attached for the Court's review—several excerpts merit mention as the Court considers an appropriate sentence.

ZIRKLE'S SENTENCING MEMORANDUM - 5
CASE NO. 2:18-CR-00277-RAJ

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

130136.0001/7597482.5

First, Mr. Zirkle's fiancée, Mary Correll, came into his life only after the government had begun its investigation. But his honesty about this crisis of his own making, as well as his dedication to those closest to him, allowed her to look past this conduct and see the moral and loving person Mr. Zirkle is. The kind of person who loves his own children and hers, who has taken care of his recently deceased friend's family over the last year, and who travels to Tennessee and Kentucky every few months to check in on his father and sister, make home repairs, and clean his father and stepmother's chicken coop. Dr. Correll captures who Mr. Zirkle really is:

> I met Jeff in May of 2017 and we recently became engaged. Jeff has been completely upfront and honest with me about his legal issues since day one. Although I worried about it all from the very beginning, I could not help falling in love with him. Jeff has been a constant in my life for the past two years. Even with all he has going on, his concerns are never about himself but always about those around him. I've witnessed this over and over in almost every facet of his life since we have been together.

Ex. 1.

Next, Mr. Zirkle's niece, Jess, movingly describes the support her uncle has provided since her father's death in 2013. Mr. Zirkle took Jess and her mother (Mr. Zirkle's sister) into his home, contributed to the tuition payments for her "dream college," and supported her nascent music career. As importantly, Mr. Zirkle has given this support without wishing for any attention for himself and his generosity:

> Jeff lives unselfishly. He is not haughty; he does not boast his good fortune, which was earned from years of diligent, steadfast work. Instead, he quietly gives. He gives what's needed and then he gives some more. Jeff operates, not being bound by obligation, but rather on altruistic kindness towards family and friends, alike. I am and will forever be proud to call Jeff Zirkle my uncle. It is my hope that you will take all of the above into deep consideration prior to his sentencing. It is my hope that I've explained well enough that Jeff Zirkle is a good man.

*Id.*

Moving beyond Mr. Zirkle's family, his friends, neighbors, employees, and business associates also enthusiastically attest to Mr. Zirkle's character. For example, lifelong friend Scot Cook highlights both Mr. Zirkle's remorse and the kind of dedication to others that Mr. Zirkle regularly demonstrates:

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1

I have had conversations with Jeff regarding the events that have transpired. I can tell you he is extremely remorseful and regretful for the decisions he made related to these charges. Over Jeff's professional career he has made countless business decisions that have not only benefitted and enriched his life but the hundreds of individuals who worked for the companies he founded. I can assure you these regrettable events and the decisions Jeff made relating to these charges are anomalies and not representative of Jeff's typical judgment.

. . . .

Jeff has always been generous with close friends and family, but if I had to pick one example, perhaps the act most representative of his good character was his continued care for an early employee of Total Reclaim. This person had little or no local family so Jeff essentially became his caretaker. Jeff saw to it that he had a place to live and medical care. He made sure that his employee, who had several health issues, made and kept appointments and at times personally drove him to and from the doctor. He made sure prescriptions were filled and medications were taken as directed. This selfless act of appreciation and kindness provides an insightful understanding of Jeff's true character.

Ex. 2.

Craig Saunders, a 35-year friend of Mr. Zirkle, confirms this spirit of giving. But beyond the financial—Mr. Zirkle gave Mr. Saunders and his family monthly payments for two years to help them through difficult times—Mr. Saunders highlighted one of the smaller gestures that show Mr. Zirkle's character:

As far as our friendship I can't imagine a better friend in the world. Because I'm a firefighter, many times when a storm or flood happens I have to leave my family for days at a time. One time when our kids were ages one and three years old there was an ice storm. I had to go to work and my family didn't have heat for four days. We had a wood stove but no firewood split and ready. We lived at the top of a very steep driveway which we couldn't drive up. My wife said she looked outside and there came Jeff hiking up the driveway carrying firewood, load after load so that my wife and kids would have heat for the house.

*Id.*

The same is true of the observations of Mr. Zirkle's other friends and colleagues. The Court can see that in the letter from longtime neighbor Brad McCord, who described Mr. Zirkle as a "an advocate for the underdog" and is sure that Mr. Zirkle would not repeat his crime because "that conduct is inconsistent with the Jeff Zirkle I have known and observed and from whom I have received ethical advice over many years." Ex. 2. A Total Reclaim employee of nearly fifteen years, Lazarus Arps, shared similar sentiments. Mr. Arps is grateful to Mr. Zirkle for seeing "the

ZIRKLE'S SENTENCING MEMORANDUM - 7
CASE NO. 2:18-CR-00277-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

130136.0001/7597482.5

potential in [him] even though [he does not have] a lot of higher education" putting him into positions in the company with the responsibility and trust to fulfill that potential. Ex. 3. Mr. Arps also volunteers that "a fundamental goal of our company is learning from mistakes and continuous improvement," and knows that Mr. Zirkle "deeply regrets his poor judgment." *Id.*

Patrick Phillips, a business associate of more than twenty years who has done work for Total Reclaim, offered yet another perspective:

> I watched him time after time creating and dreaming up new ideas that would better his business and help his workers efficiently tear down recyclable material. I have been in the metal recycling business 30 plus years and been in and out of every scrap yard in our state. I was blown away with the level of how many things his company was doing compared to others. He ran a very clean operation.
>
> . . . .
>
> In closing, I just want to reiterate the view I have of Jeff Zirkle. He is a man of higher morals than most in this industry. Jeff provides for so many different people, hundreds of people count on his guidance and direction. He's a good employer, he's a good person, and he's human. We all make mistakes, but those mistakes shouldn't define us. I know that Jeff is a very sorry for what he did.

*Id.*

Mr. Phillips is right. Our mistakes should not define us. But it is one thing for family, friends, employees, and business partners to recognize this principle. Far more telling is when a victim of fraud acknowledges it about the perpetrator of the fraud. Yet that is what has happened here. Last month, Tait Chandler, the executive director of Green Star of Interior Alaska—a nonprofit entity and victim of Mr. Zirkle and Mr. Lorch's fraud—published an op-ed in the *Daily News-Miner* in Fairbanks, Alaska. Ex. 5. That piece, which neither Mr. Zirkle nor Mr. Lorch asked Mr. Chandler to write or even knew about in advance, acknowledges that Total Reclaim sent flat screens overseas, violating its agreements with customers like Green Star.

Mr. Chandler explains that although Green Star "searched exhaustively" for an alternative to Total Reclaim, the cost of other providers in the area "far exceeded" the cost to recycle with Total Reclaim, and turning to another option would threaten the organization's "ability to offer electronics recycling to borough residents in a fiscally responsible manner." He also observes that "Total Reclaim has taken full responsibility for its actions," "changed its entire process," and

ZIRKLE'S SENTENCING MEMORANDUM - 8
CASE NO. 2:18-CR-00277-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

130136.0001/7597482.5

"has its operation fully audited every year." The op-ed notes that "Green Star has been watching the progress that Total Reclaim has made to learn from [its] mistakes" and concludes by stating that "Total Reclaim has been working with Green Star to ensure that the electronics that are sent [to Total Reclaim] are processed in a way that agrees with our principles."

Nor is Green Star the only victim open to Total Reclaim's continued operation. The executive director of the Washington Materials Management & Financing Authority ("WMMFA"), whose payments to Total Reclaim accounted for roughly 85% of the fraud loss here, informed the government as recently as April 25, 2017, that he was aware of no WMMFA Board members who had expressed the view that Total Reclaim should be put out of business, since Mr. Zirkle and Mr. Lorch had "admitted their mistake and would be back on track after this incident."

While it in no way excuses Mr. Zirkle's conduct, the understanding of so many people, including victims of the fraud, underscores (1) that Mr. Zirkle and Total Reclaim deserve a second chance, and (2) the demonstrably aberrant nature of his conduct.

## C. The Sentencing Guidelines Range

The parties agree on the appropriate Guidelines range for Mr. Zirkle. To start, the base offense level is 6 under U.S.S.G. §§ 2X1.1(a) & 2B1.1(a)(2). A 14-level increase to that score based on the fraud loss applies under U.S.S.G. § 2B1.1(b)(1)(H), leading to an offense level of 20. Enhancements for using sophisticated means (2 points), abusing trust or use of a special skill (2 points), consciously or recklessly risking death or serious bodily injury (2 points), and acting as an organizer or leader (4 points) together bring the offense level to 30.

Against these enhancements, however, Mr. Zirkle is also entitled to a reduction of 3 levels for his acceptance of responsibility, since his advisory Guidelines score exceeds a level 18. U.S.S.G. § 3E1.1. Mr. Zirkle and Mr. Lorch cooperated promptly and extensively throughout the government's investigation and elected to plead guilty. Besides producing documents and other requested information without compulsory process, Mr. Zirkle, Mr. Lorch, and Total Reclaim fully cooperated with and resolved related investigations by the Oregon Department of Justice,

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

the Oregon Department of Environmental Quality, and the Washington Department of Ecology.

The total offense level is thus 27. Mr. Zirkle's Criminal History Category is I, and indeed he has no criminal history points. Together, this yields a Guidelines range of 70 to 87 months. Because 60 months is the statutory maximum for conspiracy under 18 U.S.C. § 371, that is the cap here.

For the reasons below, however, a significant downward departure and variance from a 60-month sentence—as even the Probation Office recognizes—is warranted consistent with consideration of the § 3553(a) factors.

### III.    DEFENSE RECOMMENDATION & DISCUSSION

Mr. Zirkle requests that the Court consider and impose a sentence requiring:

- 6 months of incarceration in a federal correctional facility
- 3 years of supervised release conditioned on 12 months of home confinement with electronic monitoring and work-release eligibility
- 500 hours of community service during supervised release
- Payment of $945,663 in restitution, for which Mr. Zirkle and Mr. Lorch are jointly and severally liable

Such a sentence undeniably constitutes punishment while, at the same time, allowing for the possibility that Total Reclaim (and EcoLights) can remain viable, continue to provide valuable and needed recycling services, and continue to be a place where more than 60 employees report to work each day. Thus, Mr. Zirkle also asks the Court to stagger the sentences that he and Mr. Lorch serve so that one can remain either free or subject to home confinement and available to manage the ongoing day-to-day operations of Total Reclaim and EcoLights. Mr. Zirkle and Mr. Lorch independently concluded that six months is the longest time feasible for one or the other to be absent from the businesses, which have historically required the complementary management skills of both.

As the Court well knows, a sentence should be "sufficient, but not greater than necessary, to comply with the purposes set forth" in 18 U.S.C. § 3553(a). *Pepper v. United States*, 562 U.S.

ZIRKLE'S SENTENCING MEMORANDUM - 10
CASE NO. 2:18-CR-00277-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

130136.0001/7597482.5

476, 491 (2011) (quoting 18 U.S.C. § 3553(a)). Sentencing courts "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (citation omitted) While courts must consider the Sentencing Guidelines as part of this individualized assessment, the Guidelines are neither determinative nor presumptively appropriate. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). The § 3553(a) factors include the nature and circumstances of both the offense and the offender, and other considerations such as deterrence, just punishment, public safety, and the interest in paying restitution to victims.

This memorandum will not march through a formulaic discussion of those factors. Instead, they are subsumed in the discussion of the circumstances that favor Mr. Zirkle's proposed sentence: his extraordinary acceptance of responsibility; the provably aberrational nature of his criminal conduct; and the benefit to the community of allowing Mr. Zirkle (and Mr. Lorch) to continue operating both Total Reclaim—an innovative, award-winning, and, today, fully compliant company—and EcoLights, which together contribute meaningfully to our region's environment and economy.

## A. Mr. Zirkle's Extraordinary Acceptance of Responsibility

On realizing that a nonprofit organization concerned with e-waste exports by the U.S. recycling industry had learned that Total Reclaim had breached its service agreements, and following discussions with that organization, Mr. Zirkle and Mr. Lorch publicly acknowledged their wrongdoing in a May 2016 joint statement on Total Reclaim's website. The public statement (Ex. 6), acknowledged both the contractual breach and the potential environmental and human harm that could have been caused in Hong Kong as a result.

Later, the U.S. Environmental Protection Agency and the U.S. Attorney's Office for the Western District of Washington launched a criminal investigation of Total Reclaim, Mr. Zirkle, and Mr. Lorch. All three fully cooperated with law enforcement requests for documents and other information during the government's criminal investigation. Mr. Zirkle and Mr. Lorch even

ZIRKLE'S SENTENCING MEMORANDUM - 11
CASE NO. 2:18-CR-00277-RAJ

130136.0001/7597482.5

authorized Total Reclaim's counsel to voluntarily disclose certain actions they had taken—and later reversed—to conceal the sale of flat screens for export. Total Reclaim also entered into related administrative settlements with the Washington Department of Ecology and the Oregon Department of Environmental Quality for $383,625 and $145,143, respectively, and resolved a related civil enforcement matter with the Oregon Department of Justice for $553,000. Those settlement agreements are collected at Exhibits 7–9 and total more than one million dollars.

Over the course of many months, the government and counsel for Total Reclaim, Mr. Zirkle, and Mr. Lorch discussed alternatives for resolving the government's investigation, both civil and criminal. Ultimately, however, the government insisted that the matter be resolved with a criminal disposition, although only as to Mr. Zirkle and Mr. Lorch. The government allowed Total Reclaim to execute a non-prosecution agreement and in so doing recognized its value to Seattle and the Pacific Northwest as a going concern.

Because he had indeed engaged in criminal conduct, and to further demonstrate his ongoing cooperation and acceptance of responsibility, Mr. Zirkle entered a guilty plea to one count of conspiracy to commit wire fraud and agreed to make restitution to Total Reclaim's defrauded customers. The restitution obligation, shared jointly and severally with Mr. Lorch, totals $945,663. A check in that amount has been tendered by Mr. Zirkle and Mr. Lorch to counsel to be paid into the Court's registry immediately after entry of judgment.

Nor did Mr. Zirkle's acceptance of his culpability end with his guilty plea. He and Mr. Lorch have placed op-eds in the *Puget Sound Business Journal* (circulation 18,000), *E-Scrap News* (circulation 13,000), and *Recycling Today* (circulation 16,000)—the latter two leading industry publications. The piece in *E-Scrap News* had the most unique page views of any story the outlet published in January 2019.[1] The op-eds, entitled *Learn from Our Mistakes*, candidly describe the flawed and short-sighted decision-making that led to the offense conduct and urge others, both within and outside the recycling industry, to learn from and to avoid Mr. Zirkle and

---

[1] *See* "Our Top Stories from January 2019," *E-Scrap News* (Feb. 7, 2019), https://resource-recycling.com/e-scrap/2019/02/07/our-top-stories-from-january-2019/.

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Mr. Lorch's mistakes and the painful and lasting consequences—personal and professional—that have flowed from them. The two paid to place two of the three op-eds to retain editorial control over the content and ensure that the details of their conduct and acknowledgment of their wrongdoing would not be abbreviated. The op-eds are attached as Exhibit 10. They, along with the discussions of his remorse highlighted in several of the attached letters of support, attest to the sincerity of Mr. Zirkle's appreciation for the seriousness of his offense and the genuineness of his contrition.

Finally, Mr. Zirkle submitted—along with Mr. Lorch—a written statement of acceptance of responsibility to the Probation Office, attached as Exhibit 11, and Mr. Zirkle intends to address the Court at sentencing.

**B.      The Aberrational Nature of Mr. Zirkle's Conduct**

Many defendants with no criminal history claim at sentencing that their criminal conduct does not accurately portray who they are as people. Here, however, Mr. Zirkle's crime is provably aberrant, even putting aside the letters of support that attest to his selflessness, integrity, and generosity of spirit.

In fact, revenue attributable to flat-screen-related payments to Total Reclaim from its customers (for processing) and from its third-party exporter (for export) together accounted for only 2% of the total revenue that Total Reclaim generated over the time during the relevant time period. *See* Ex. 12 ¶ 8. If one also considers the revenue generated by EcoLights, the other business owned by Mr. Zirkle and Mr. Lorch, the percentage drops to 1.7% of total revenue. *Id.* Considering the percentage of the total volume of material processed by Total Reclaim during the relevant period paints a similar picture. Just 2.8% of the total volume of material processed by Total Reclaim—and just 2.6% of the combined volume of material processed by Total Reclaim and EcoLights—was composed of exported flat screens. *Id.* ¶ 10. Thus, almost all of Total Reclaim's revenue during the years at issue was legitimately derived and almost all the material it processed was handled appropriately.

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

These percentages, and not the ill-considered and expedient misrepresentations he and Mr. Lorch made to various customers during the period at issue and for which they have pleaded guilty, tell the more important story of Total Reclaim (and Mr. Zirkle himself): a successful innovative, and overwhelmingly compliant small business dedicated to the environmental well-being of the communities it serves. Mr. Zirkle has continued to show his dedication to sustaining Total Reclaim and its workforce, investing more than $500,000 in the business since 2016. The enterprise that he and Mr. Lorch built should not disappear—to the detriment of their employees and customers—because of an inexcusable and serious lapse in judgment.

Mr. Zirkle does not offer the statistics about revenue and material volume to duck accountability for his actions. He does so rather to highlight a critical difference between his conduct and that of many other fraud defendants; his business is a legitimate enterprise that enormously benefits his community. In many other fraud cases, including one discussed below, a defendant's business operations are a sham. Not so here. Indeed, the government has implicitly recognized this by declining to prosecute Total Reclaim as an entity.

And importantly, other than relatively minor administrative citations since their founding in 1991, neither Total Reclaim nor EcoLights has been the subject of any other investigation or enforcement action related to the proper handling of the hundreds of millions of pounds of material tendered to them for recycling. The businesses pay taxes and employ dozens of people. As the Court has seen in the video attached as Exhibit 4, Total Reclaim has been an innovator in the field. Indeed, the unsolicited op-ed from Green Star's executive director confirms that Total Reclaim provides an invaluable and fully compliant service—particularly in Alaska where there are few options—at the lowest price. That the executive director of the victim accounting for 85% of the fraud loss here also told the government that his organization's board had not advocated that Total Reclaim be put out of business for its transgressions is also highly relevant.

As even its victims have acknowledged, Total Reclaim deserves a chance at redemption, a chance it will not have if Mr. Zirkle and Mr. Lorch are sentenced to lengthy terms of imprisonment.

ZIRKLE'S SENTENCING MEMORANDUM - 14
CASE NO. 2:18-CR-00277-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

## C.     Bodily Injury Enhancement

Among the Sentencing Guidelines enhancements that Mr. Zirkle has not contested is one for creating a conscious or reckless risk of death or serious bodily injury. *See* U.S.S.G. § 2B1.1(b)(15)(A). From their May 2016 public statement forward, Mr. Zirkle and Mr. Lorch have acknowledged that they were insufficiently mindful of the potential consequences of their decision to sell flat screens for export. Once flat screens leave the United States, it becomes impossible to control their ultimate disposition. Because flat screens contain mercury in some of their component parts, this creates a risk of potentially serious bodily harm.

Beyond that, however, any harm flowing from Total Reclaim's decision to sell flat screens for export to Hong Kong is purely speculative. This needs to be kept in mind when considering the Probation Office's recommendation, and the video and expert report[2] submitted by the government.

To start, exporting flat screens to Hong Kong is not—as the Plea Agreement acknowledges—prohibited by U.S. law. Instead, it was Mr. Zirkle and Mr. Lorch's broken promises to their customers that made those exports criminal.

As for what happened once the flat screens were exported, there is no evidence from which the Court can determine the likelihood that any worker was harmed. While the government trumpets a figure of 8.3 million pounds of flat screens exported during the relevant time, the third-party exporter himself told the government that at least 70% of each shipment of exported flat screens should have been suitable for reuse or refurbishment, posing no obvious danger to any foreign workers. Indeed, from Mr. Zirkle's perspective, it would make no economic sense for the third-party exporter to have approached Total Reclaim about buying flat screens unless the exporter expected to be able to re-sell (and not pay a second time to recycle) nearly all flat screens.

---

[2] The Court should consider that the toxicologist whose report is cited by the government is hardly independent: she is employed by the U.S. Environmental Protection Agency, the same agency that conducted the criminal investigation here.

ZIRKLE'S SENTENCING MEMORANDUM - 15
CASE NO. 2:18-CR-00277-RAJ

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

And as the attached declaration from an industrial hygienist explains, there is not enough information about the flat screens that *were* disassembled at the facility depicted in the video submitted by the government to say whether anyone was likely injured, let alone by a flat screen originating at Total Reclaim. *See* Exhibit 13 ¶ 5. The declaration describes some of the analytical challenges to determining that likelihood, including several unknown variables:

- The quantity of Total Reclaim flat screens at the facility
- The quantity, if any, of mercury-containing tubes from Total Reclaim that were broken by workers at the facility
- The temperature, wind speed, and wind direction at the facility over time

Together, these and the other variables identified in the attached declaration make it impossible even to say whether the workers depicted in the video were exposed to mercury levels above those considered safe by the Occupational Safety and Health Administration, much less whether any worker was likely to have been harmed.[3] *See id.* ¶¶ 7–14.

This is not to deny that Mr. Zirkle's conduct was serious, and should not be excused. But any risk of harm to workers in developing countries resulted from insufficient attentiveness to the processes used in foreign operations less prominent in Mr. Zirkle's consciousness than those employed by Total Reclaim. While it is true that Total Reclaim realized additional revenue due to selling flat screens for export, the decision to sell flat screens was prompted by inadequate processing capacity and continued because it allowed Mr. Zirkle and Mr. Lorch to postpone a day of reckoning with Total Reclaims production constraints. Even so, Mr. Zirkle feels deep

---

[3] The rationale for the Probation Office's recommendation does not appreciate these variables, focusing instead on the 8.3-million-pound figure and stating that "[t]hese flat screen monitors and their mercury-containing components were dismantled by the laborers at an informal outdoor recycling plant" without precautions, exposing workers and the environment to mercury. That conclusion is unsupported. Mr. Zirkle and Mr. Lorch's agreement to the 2-point enhancement acknowledges that the export of mercury-containing components necessarily creates *some* risk—the language of the enhancement says only "risk"—but at least 70% of the exported flat screens were *not* disassembled. There is moreover no information about how many flat screens originating at Total Reclaim were diverted to the facility in the video. Nor is there information about how many, if any, flat screens originating at Total Reclaim arrived in Hong Kong with mercury-containing components still intact, or whether any worker was exposed to—much less actually harmed by—mercury from such a flat screen.

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

remorse over all aspects of his criminal conduct, and the notion that he would intentionally endanger foreign workers is inconsistent with Total Reclaim's workplace-safety practices and a lifetime of caring for those facing challenges of all types, including health-related challenges.

## D. Just Punishment and Deterrence

Mr. Zirkle's recommended sentence would provide meaningful punishment for his crime without imperiling the economically, environmentally, and socially valuable enterprises that he and Mr. Lorch have spent decades building. It also coheres with the sentences imposed for the only two other defendants the government has prosecuted for committing similar—but more culpable—offenses.

The more recent of those sentences was imposed just last week. In *United States v. Brundage*, the court imposed a 36-month sentence on the owner of a business that the government described as a "sham recycling company" where 75 to 80 percent of the materials  customers paid to recycle (mostly lead-containing CRT monitors) "were fraudulently disposed of—either through re-selling [for export], landfilling or stockpiling." Judgment at 2, No. 1:16-cr-00812 (N.D. Ill. Apr. 11, 2019), ECF No. 100; Ex. 14 (Government's Sentencing Mem. in *Brundage*) at 10. Brundage, who himself requested a noncustodial sentence, pleaded guilty to wire fraud (as opposed to conspiracy) for misrepresenting the nature of his company's recycling services over an 11-year period, resulting in a fraud loss to customers of $538,000. He also pleaded guilty to an elaborate tax evasion scheme involving millions of dollars of concealed income he used to fund a lavish lifestyle, resulting in a federal tax liability of $744,000, and a total restitution obligation of $1,282,000—almost $340,000 more than the restitution Mr. Zirkle and Mr. Lorch have committed to repay.

Another recent sentence was imposed on the CEO of Executive Recycling. That company offered similar services to Total Reclaim's, and also committed not to export electronic waste to certain countries. The owner and CEO, Brandon Richter, was convicted of wire and mail fraud, obstruction of justice, and environmental offenses at trial. *See United States v. Richter*, 796 F.3d 1173, 1178 (10th Cir. 2015). After a partial reversal of his convictions by the Tenth Circuit,

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Richter received a 22-month sentence for his surviving obstruction conviction and a guilty plea to conspiracy to commit wire fraud. *See id.* at 1201; Amended Judgment at 1–2, *United States v. Richter*, No. 1:11-cr-00376-WJM (D. Colo. June 20, 2017), ECF No. 656.

Admittedly, the fraud loss attributable to Brundage and Richter was less than the loss here. And while Brundage's fraud occurred over an 11-year period, Richter's lasted about 4 years. Those cases also did not include enhancements for creating a risk of serious bodily injury—even though the facts in both similarly supported applying that enhancement.

But other differences favor Mr. Zirkle in important ways. To start, besides pleading guilty to the substantive offense of wire fraud, Brundage pleaded guilty to a multi-million dollar tax evasion scheme, and Richter was also convicted at trial of obstruction of justice. Next, whereas Brundage ran a sham recycling operation recycling no more than 25% of the materials tendered by customers, Mr. Zirkle and Total Reclaim properly processed and disposed of 97% of the material tendered by customers to Total Reclaim. In addition, Richter was also initially prosecuted for an environmental crime: exporting of CRTs (in which Brundage also engaged), which was independently criminal, unlike the flat-screen exports for which Mr. Zirkle was responsible. Moreover, despite the shorter duration of Richter's conspiracy, he sold almost $1.971 million of lead-containing CRTs for export—nearly twice Total Reclaim's flat-screen sales for export. *See* Plea Agreement ¶ 28, *United States v. Richter*, No. 1:11-cr-00376-WJM (D. Colo. Feb. 25, 2016), ECF No. 591. And finally, there is no evidence that either Brundage or Richter authored and published op-eds and other statements educating others in the field about the nature of their misconduct and flawed decision-making, and encouraging others to learn from their mistakes.

Richter also denied any wrongdoing during a nationally broadcast segment on *60 Minutes*. Mr. Zirkle, of course, did no such thing and instead publicly acknowledged and took responsibility for his misconduct. Further, unlike the extensive and voluntary cooperation with law enforcement here, Richter's cooperation came only after his conviction at trial. Brundage appears to have done little to aid prosecutors, other than pleading guilty, and indeed the

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

government's sentencing memorandum accuses Brundage of subsequently disavowing many of the admissions he made in his plea agreement. *See* Ex. 14 at 4, 6, 8–9.

Together, these distinctions outweigh the greater fraud loss and risk of harm enhancement here, and justify a sentence less severe than the ones Brundage and Richter received. Mr. Zirkle's proposed sentence carries with it 6 months of incarceration. That time would be followed by a year of home confinement. And it is well settled that a non-custodial sentence represents "a substantial restriction of freedom." *Gall*, 552 U.S. at 48. This is especially so when a defendant is sentenced to home confinement. *See, e.g.*, *United States v. Munoz-Nava,* 524 F.3d 1137, 1149 (10th Cir. 2008) (holding that "home confinement and supervised release substantially restrict the liberty of a defendant"); *United States v. Gonzalez*, 2004 WL 230992, at *6 (S.D.N.Y. Feb. 5, 2004) ("Imposing a period of home detention rather than incarceration [on a defendant who had never been incarcerated] will adequately serve the aims of punishment and deterrence.").

Mr. Zirkle's proposal also advances the interests in both specific and general deterrence. As for the former, it is virtually inconceivable—as the Probation Office agrees—that Mr. Zirkle is at risk to re-offend given the aberrant nature of his conduct.

Second, the sentence Mr. Zirkle requests will deter others. A government press release replete with rote, ghost-written quotes attributed to a laundry list of agency officials and touting a long prison sentence (which may or may not generate press attention depending on the other news of the day) will not be as effective as the sincere efforts Mr. Zirkle and Mr. Lorch have already undertaken, both within the national recycling community and the Pacific Northwest business community, to publicize the very real and significant consequences—personal and professional—they have endured for their crime.

Indeed, while general deterrence is an important component of sentencing, social science research suggests that, in white-collar cases, a credible threat of prosecution and conviction alone is sufficient to deter others, even without an added need for lengthy incarceration. The government's successful prosecutions of Richter, Brundage, and this case provide just such a deterrent. Moreover, "there is considerable evidence that even relatively short sentences can have

ZIRKLE'S SENTENCING MEMORANDUM - 19
CASE NO. 2:18-CR-00277-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

130136.0001/7597482.5

a strong deterrent effect on prospective 'white collar' offenders." *United States v. Adelson,* 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) (collecting authorities). There is thus little marginal deterrence to be gained by imposing the sentence recommended by the government or by the Probation Office in lieu of the sentence recommended by Mr. Zirkle. And of course, a longer sentence will almost assuredly lead to the shuttering of Total Reclaim and the cessation of valuable and, today, fully compliant waste processing services.

## IV.    CONCLUSION

Mr. Zirkle conspired to defraud certain of Total Reclaim's customers. He deserves to be punished, and he recognizes as much. He and Mr. Lorch have issued repeated public statements, since shortly after their misconduct was revealed, acknowledging their culpability and urging others in both the Pacific Northwest business community and the national electronic-waste recycling community to learn from their short-sighted, unethical, and expedient decision-making. He and Mr. Lorch have arranged for immediate payment of restitution on entry of judgment. Between his share of restitution, attorney's fees, and the administrative and civil settlements with the Washington Department of Ecology, the Oregon Department of Environmental Quality, and the Oregon Department of Justice, Mr. Zirkle alone has paid out more than the entire fraud loss his misconduct has caused. Total Reclaim has also experienced significant reductions in the volume of material entrusted to it by customers due to adverse publicity associated with the criminal investigation and resulting guilty pleas. And most difficult of all, Mr. Zirkle has experienced the utter humiliation of having to explain to friends, family, and business associates, all of whom considered him an example of personal integrity and square dealing, that he broke the law and expects to be incarcerated. Even before this Court pronounces sentence, Jeff Zirkle has been punished and experienced profound consequences for his conduct.

Unlike most white-collar defendants without criminal histories, Mr. Zirkle is not asking for a sentence of probation. The sentence he asks the Court to impose—6 months incarceration followed by supervised release conditioned on 12 months of home confinement—will further the § 3553(a) factors without being more severe than necessary. It will also permit the possibility that Total Reclaim can continue in operation under Mr. Zirkle and Mr. Lorch, who have together proven to be an

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

effective and complementary management team over the decades. A sentence that forecloses that possibility, after the many actions Mr. Zirkle has voluntarily taken to atone for his misconduct and the steps he has taken to try and provide a viable path forward for what all agree is now a fully compliant business, serves no useful purpose.

Instead, a sentence that constitutes meaningful punishment, but also recognizes Mr. Zirkle's extensive cooperation, exceptional acceptance of responsibility, innovation and economic productivity, lack of criminal history, and demonstrated prosocial values—is justified and appropriate here.[4]

DATED: April 16, 2019

LANE POWELL PC


By    *s/ Harold Malkin*
Harold Malkin, WSBA No. 30986
E-mail:  malkinh@lanepowell.com
Aaron P. Brecher, WSBA No. 47212
Email:  brechera@lanepowell.com
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone:  206.223.7000
Facsimile:  206.223.7107

Attorneys for Defendant Jeffrey Zirkle

---

[4] Mr. Zirkle also joins and incorporates by reference the arguments made in Mr. Lorch's sentencing memorandum.

ZIRKLE'S SENTENCING MEMORANDUM - 21
CASE NO. 2:18-CR-00277-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, on the date indicated below, I caused the foregoing document to be presented to the Clerk of the Court for filing and uploading to the CM/ECF system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to all attorneys and parties of record.

I affirm under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my personal knowledge.

SIGNED April 16, 2019, at Seattle, Washington.


_s/ Patti Lane_____
Patti Lane, Legal Assistant

ZIRKLE'S SENTENCING MEMORANDUM - 22
CASE NO. 2:18-CR-00277-RAJ

130136.0001/7597482.5

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107